faUNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | : | |
| CARLTON THEODORE LANDIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 23-3635 (CKK) |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

Over the years, Cartlton Theodore Landis ("plaintiff") has been designated to several

Federal Bureau of Prisons ("BOP") facilities, including seven penitentiaries (USPs Yazoo City,

Allenwood, Lewisburg, Thompson, Victorville, Coleman and McCreary) and one correctional

institution (FCI Petersburg). This civil action pertains to four aspects of plaintiff's confinement.

Before the Court is Defendant's Motion to Dismiss and Memorandum in Support (ECF

No. 15) and plaintiff's Motion for Order (ECF No. 25). For the reasons discussed below, the

Court GRANTS the former and DENIES the latter.

**I. BACKGROUND**

**A. Defendant's Motion to Dismiss is Unopposed**

Plaintiff filed his complaint (ECF No. 1, "Compl,") on December 4, 2023.[1] Defendant

filed its motion to dismiss and supporting memorandum (ECF No. 15, "Def.'s Mem.") on

---

[1]     Plaintiff's complaint is a preprinted form with a handwritten Statement of Claim. In this
Memorandum Opinion, unless specified otherwise, the Court cites the handwritten statement and
the paragraph numbers designated by plaintiff.

November 15, 2024.  The Court issued an Order (ECF No. 16) on November 18, 2024, advising

plaintiff of his obligation to respond to the motion, and if he failed to do so, the Court would rule

on defendant's motion without the benefit of his position.  The Order set December 27, 2024, as

the deadline for plaintiff's opposition.  Plaintiff requested, and the Court granted, four extensions

of time by Minute Orders on December 31, 2024, January 23, 2025, April 7, 2025, and May 22,

2025.  The latest deadline, July 31, 2025, has passed, and plaintiff neither filed a response to

defendant's motion nor requested additional time to do so.

The Court's ruling is based on plaintiff's original complaint and the memorandum

supporting defendant's motion to dismiss.

### B. Plaintiff's "Motion for Order" is Denied

Plaintiff filed his Motion for Order (ECF No. 25, "Pl.'s Mot.") on August 25, 2025.  He

represented that, on July 25, 2025, he mailed to the Clerk of Court "an amended complaint in

response to Defendant's Motion to Dismiss."  *Id*. ¶ 2.  He neglected to "put the case number on

the amended complaint," *id*., and the Clerk of Court treated it as a complaint in a new civil

action.  The Clerk of Court issued a deficiency notice in the new action on August 7, 2025,

directing plaintiff either to submit an application to proceed *in forma pauperis* or pay the filing

fee in full, and warning that his failure to comply would result in the administrative closure of

the case.  Plaintiff did not respond, and the Clerk of Court administratively closed the case.  *See*

*Landis v. Fed. Bureau of Prisons*, No. 25-cv-2593 (UNA) (D.D.C. Sept. 16, 2025).

"In order to correct the clerical error provoked by [p]laintiff's inadvertence, [p]laintiff

respectfully requests that this Court file the complaint in Case No. 25-cv-02593-UNA as [his]

First Amended Complaint in this action."  Pl.'s Mot. ¶ 5.

A plaintiff may amend his complaint under the following conditions:

(1) Amending as a Matter of Course.  A party may amend its pleading once as a matter of course no later than:

    (A) 21 days after serving it, or

    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) Other Amendments.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

FED. R. CIV. P. 15(a).

The decision to grant or deny leave to amend a complaint "is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  In determining whether "justice so requires," the Court considers factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" *Atchinson v. District of Columbia*, 73 F.3d 418, 425-26 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see Richardson v. United States*, , 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Foman*, 371 U.S. at 182).  The Court "may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 181–82).  Consequently, "review for futility 'is, for practical purposes, identical to review of a Rule 12(b)(6)' motion to dismiss." *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 57 (D.D.C. 2012) (quoting *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215-16 (D.C. Cir. 2010)).

The time for plaintiff to have amended his complaint as a matter of course under Rule 15(a)(1) has passed, and at this late date, he may amend only with defendant's consent or by the

Court's leave.  The Court presumes that defendant opposes the motion, and the Court denies

leave to amend.  Based on the Court's review of the proposed amended complaint, which is

substantially similar to the original complaint, amendment is futile.

## II. PLANTIFF'S FACTUAL ALLEGATIONS

### A. First Step Act Time Credits

In 2003, plaintiff was convicted in the United States District Court for the Eastern

District of North Carolina of possession of cocaine with intent to distribute and, in violation of

18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime.  *See*

Compl. ¶ 1.  That court imposed a 12-year term of imprisonment, and in 2012, plaintiff began a

five-year term of supervised release.  *See id*. ¶¶ 1-2.  Plaintiff violated the terms of his supervised

release when charged with and convicted of unarmed bank robbery in 2013.  *See id*. ¶ 3.  Upon

completion of a five-year term for the supervised release violation, plaintiff began to serve a 14-

year term of imprisonment for bank robbery in 2018.  *See id*. ¶ 4.

Plaintiff claims he "already served all of his prison term for his conviction for possession

of a firearm in furtherance of a drug trafficking crime," *id*. ¶ 11, and considers it "a prior

conviction," *id*., which does not disqualify him from earning time credits under the First Step

Act.  *See generally id*. ¶¶ 7-12.  BOP, however, deems plaintiff ineligible for FSA time credits,

*see id*. ¶¶ 7, 12, in light of the conviction under 18 U.S.C. § 924(c), *see id*. ¶¶ 8, 56, and plaintiff

demands judicial review of BOP's determination, *see id*. ¶ 56.

**B. Sex Offender Public Safety Factor**[2]

Plaintiff alleges that he filed several grievances against Mr. Hart, his former case manager at USP Coleman. *Id*. ¶ 13. In retaliation, plaintiff alleges, Mr. Hart caused plaintiff to "be labelled a rapist." *Id*. ¶ 15. Plaintiff "has a Public Safety factor (PSF) for being a sex offender," *id*. ¶ 16, which he discovered upon his arrival at USP McCreary in or about 2022, *see id*. ¶¶ 16, 37. Plaintiff denies ever having "engaged in any conduct to warrant being labelled a sex offender," *id*. ¶ 18, or having "been charged or convicted for a sex offense," *id*. ¶ 19. He demands removal of the sex offender PSF. *See id*. ¶ 47.

**C. Placement in Restraints**

According to plaintiff, "at least a dozen times," *id*. ¶ 22, at every institution to which BOP designated him, *see id*. ¶ 23, BOP staff placed him or threatened to place him in restraints, *see id*. He alleges each instance reflects "a pattern of malicious and sadistic conduct by BOP officials," *id*. ¶ 25, beginning with a threat to place plaintiff in restraints if plaintiff defied a staff member's direction, *see id*. ¶ 25(a)–25(b), followed by a fabricated incident report accusing plaintiff of threatening a staff member, *see id*. ¶ 25(c). Plaintiff's alleged threat would be used to justify extraction of plaintiff from his cell by a "team[] dressed in riot gear," *id*. ¶ 25(e), after which plaintiff would be "stripped of all his clothes, placed in paper clothing and overly tightened hard (metal) restraints (consisting of metal shackles and metal handcuffs with a block box that is made to attach to a metal 'belly chain'), and placed in an extremely cold 'restraint cell,'" *id*. ¶ 25(f). Plaintiff alleges that, while in a restraint cell, staff would deny him food,

---

[2]    "There are nine Public Safety Factors (PSFs) which are applied to inmates who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., MINIMUM security)." Program Statement 5100.08, Inmate Security Designation and Custody Classification (9/12/2006) ch. 2 p. 4. "Sex offender" is one such factor. *See id*., ch. 5 p. 8.

tighten the restraints, threaten him and physically assault him, *see id.* ¶ 25(h), and falsify reports

to create the impression that plaintiff "was unruly" when staff members conducted "restraint

checks," *id.* ¶ 25(i).  In addition, plaintiff alleges, staff would release him "when . . . they are

satisfied with the pain, injury, and suffering they . . . inflicted on [him] while restrained," *id.* ¶

25(j), and falsify medical reports to conceal any resulting injuries, *see id.* ¶ 25(k).  The restraints

allegedly cause "severe bruising, swelling, gashing, numbness, acute pain, blistering, and/or

discoloration of [p]laintiff's wrists, hands, waist, and ankles."  *Id.* ¶ 25(k).  Such actions, which

plaintiff attributes to BOP, "constitute cruel and unusual punishment."  *Id.* ¶ 31.  Plaintiff

demands injunctive relief barring BOP's use of restraints on him, *see id.* ¶ 49, and setting

conditions if restraints are ever applied, *see id.* ¶ 50.

### D. Plaintiff's Safety

"In 2003, [p]laintiff received a reduced sentence for his substantial assistance in

connection with his federal charges for possession of cocaine and possession of a firearm in

furtherance of a drug trafficking crime."  *Id.* ¶ 32.  His status as a "snitch" subjects him to

threats, harassment and assault by other inmates.  *See generally id.* ¶¶ 34-35.

According to plaintiff, inmates in a penitentiary's general population demand to see a

new inmate's "paperwork," *id.* ¶ 34, to determine whether the new inmate had ever "cooperated

('snitched') with law enforcement," *id.*  If the paperwork was "good," that is, showing no

evidence the new inmate's cooperation, the inmate would remain in the general population.  *Id.*

If the new inmate's paperwork was "hot," *id.*, that is, showing evidence of prior cooperation with

law enforcement, the inmate would be "run up top," *id.*, meaning that other inmates would

remove him by force from the general population, *see id.*  Plaintiff alleges he had this experience

at six of the seven penitentiaries to which BOP designated him, *see id*. ¶ 35, where plaintiff was "threatened, harassed, attacked, and forced into protective custody," *id*.

Once in protective custody, BOP officials allegedly "twisted or prevaricated" the reason for his placement "to make it appear that [p]laintiff could remain in [the general population] despite his prior cooperation with law enforcement," and that plaintiff "was simply refusing to return to [the general population] on his own accord, not because there was a threat to his safety in [the general population]." *Id*. Thus, BOP would keep him "in segregation for at least 6 months at a time," *id*., while falsifying incident reports to justify "a disciplinary transfer," *id*., instead of a transfer "to a BOP institution where [he] would be safe from inmates hostile to snitches," *id*.; *see id*. ¶ 41.

Plaintiff alleges that BOP retaliates against him for requesting protective custody, *see id*. ¶¶ 41-42, by, for example, sending him to penitentiaries where he was "subject to threats, harassment, and attack by inmates hostile to snitches," *id*. ¶ 41. Its actions allegedly "constitute cruel and unusual punishment," *id*. ¶ 43, in violation of the Eighth Amendment to the United States Constitution. Plaintiff demands, among other relief, an injunction barring BOP from transferring him "to any BOP institution where inmates in [the general population] are known to . . . threaten, harass, and/or attack inmates due to their prior cooperation with authorities[.]" *Id*. ¶ 48; *see id*. ¶ 55.

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act in relevant part provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Plaintiff appears not to have filed a grievance with respect to any claim

brought forth in this lawsuit.  *See* Compl. (preprinted form) at 6-7 (page numbers designated by

CM/ECF).  Defendant first moves to dismiss the complaint in its entirety on the ground that

plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.  *See generally*

Defs.' Mem. at 15-18 (page numbers designated by CM/ECF).

A prisoner plaintiff is "not required to specially plead or demonstrate exhaustion in [his]

complaint[]."  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Rather, "failure to exhaust is an

affirmative defense," *id*.; *see Perttu v. Richards*, 605 U.S. 460, 469 (2025) ("PLRA exhaustion is

a standard affirmative defense."), which BOP must plead and prove, *see Brengettcy v. Horton*,

423 F.3d 674, 682 (7th Cir. 2005); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.) (holding

that "nonexhaustion under § 1997e(a) . . . does not impose a pleading requirement," but "creates

a defense [such that] defendants have the burden of raising and proving the absence of

exhaustion"), *cert. denied sub nom. Alameida v. Wyatt*, 540 U.S. 810 (2003).  BOP has not done

so, and its motion to dismiss on this ground is denied.

### B.  First Step Act Time Credits

#### 1. Plaintiff's Eligibility for FSA Time Credits

Under the First Step Act of 2018 ("FSA"), *see* 18 U.S.C. § 3632(d)(4), an eligible

"prisoner . . . who successfully completes evidence-based recidivism reduction programming or

productive activities shall earn [FSA time credits]," *id*., to "be applied toward time in prerelease

custody or supervised release . . . as determined under section 3624(g)," *id*. § 3632(d)(4)(C).  "A

prisoner is ineligible to receive [FSA] time credits . . . if [he] "is serving a sentence for a

conviction under" one of 38 provisions.  *Id*. § 3632(d)(4)(D).  Relevant here is the provision

"relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime," *id*. § 3632(d)(4)(D)(*xxii*), that is, 18 U.S.C. § 924(c).

According to plaintiff, BOP erroneously deems him ineligible to receive FSA time credits due to his prior conviction under 18 U.S.C. § 924(c). *See* Compl. ¶¶ 7-9. He opines that, because he "has already served all of his prison term for his conviction for possession of a firearm in furtherance of a drug trafficking crime," *id*. ¶ 11, he now is eligible to receive FSA time credits, as his current offense of conviction is *unarmed* bank robbery, *see id*. ¶¶ 10-11, which is not a disqualifying offense under 18 U.S.C. § 3632(d)(4)(D).

BOP acknowledges that the FSA "is silent as to how [it] should determine eligibility of inmates . . . with multiple convictions under different statutes." Def.'s Mem. at 22. That said, BOP relies on a separate provision:

> Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S.C. § 3584(c). Calculating a prisoner's sentence is an administrative function, as is determining a prisoner's eligibility for early release. *See Bonnie v. Dunbar*, No. 4:23-cv-1215-DCN, 2024 WL 5691164, at *7 (D.S.C. May 9, 2024) (finding that administrative functions include "discretionary administrative functions such as determining a 'current offense' for early release eligibility under 18 U.S.C. § 3621(e)"); *Sok v. Eischen*, No. 22-cv-458 (ECT/LIB), 2022 WL 17156797, at *5 (D. Minn. Oct. 26, 2022) ("Courts have consistently held that sentence calculation by the BOP and the BOP's administration of incentives which reduce the length of a prisoner's term of imprisonment are administrative functions of the BOP subject to § 3584(c)."), *report and recommendation adopted*, No. 22-cv-0458 (ECT/LIB), 2022 WL 17128929 (D. Minn. Nov. 22, 2022), *aff'd*, No. 23-1025, 2023 WL 5282709 (8th Cir. Aug. 17, 2023).

BOP argues, *see* Def.'s Mem. at 22-25, and legal authority supports, the proposition that an inmate serves a single aggregate sentence, even if he has multiple convictions under different criminal statutes. *See, e.g., Mancillas v. Fed. Bureau of Prisons*, No. 22-cv-2767-SAG, 2023 WL 5404229, at *5 (D. Md. Aug. 22, 2023) (approving treatment of petitioner's "new sentence, and the sentence stemming from the revocation of his supervised release for his § 924(c) conviction, as one aggregate term of imprisonment"). Thus, BOP need not bifurcate plaintiff's sentences. *See Keeling v. LeMaster*, No. 22-cv-0096-GFVT, 2022 WL 17407966, at *2 (E.D. Ky. Dec. 2, 2022 (rejecting argument that sentence "should . . . be bifurcated for purposes of . . . FSA eligibility, . . . permitting him to earn [credits] to be applied to his 57-month sentence on Counts 1 and 3, notwithstanding that his Count 2 conviction renders him ineligible to earn [credits] under § 3632(d)(4)(D)(xxii)")), *aff'd*, No. 22-6126, 2023 WL 9061914 (6th Cir. Nov. 22, 2023). Rather, BOP properly treats plaintiff as "serving a single, aggregated term of [227 months'] imprisonment." Def.'s Mem. at 22.[3]

As long as one of plaintiff's offenses of conviction renders him ineligible to receive FSA time credits, BOP properly deems plaintiff ineligible to earn time credits on the entire aggregated sentence. *See, e.g., Teed v. Warden Allenwood FCI Low*, No. 23-1181, 2023 WL 4556726, at *2 (3d Cir. July 17, 2023) (approving "BOP's aggregation of [petitioner's] sentence and FSA ineligibility designation" given petitioner's conviction of disqualifying offenses under 18 U.S.C. § 3632(d)(4)(D)(*xxxviii*)), *cert. denied*, 144 S. Ct. 873 (2024); *Rogers v. Hudson*, No. 24-cv-

---

[3]    *See* Judgment in a Criminal Case, *United States v. Landis*, No. 5:13-cr-0189 (E.D.N.C. Apr. 10, 2014) (ECF No. 45) (imposing 170-month term of imprisonment for bank robbery to run consecutive to revocation sentence imposed in No. 5:03-cr-0114); Judgment, *United States v. Landis*, No. 5:03-cr-0114 (E.D.N.C. Apr. 10, 2014) (ECF No. 52) (revoking supervised release and ordering that plaintiff serve 57-month term of imprisonment to be served consecutive to sentence imposed in 5:13-cr-0189).

0409-TUC-JCH (JR), 2025 WL 1181744, at *4 (D. Ariz. Feb. 13, 2025) ("Courts in the District

of Arizona have consistently determined that aggregated multiple terms of imprisonment are

treated as a single term and that a petitioner serving an aggregated term of imprisonment where

one of the terms of imprisonment is ineligible for earning time credit under the FSA renders the

prisoner an ineligible for time credit under the FSA."), *report and recommendation adopted*, No.

24-cv-0409-TUC-JCH, 2025 WL 1179441 (D. Ariz. Apr. 23, 2025); *Dahda v. Hudson*, No. 23-

cv-3008-JWL, 2023 WL 2815920, at *1 (D. Kan. Mar. 7, 2023) (concluding that, "because

petitioner's aggregate sentence of 171 months was imposed because of convictions that included

a Section 924(c) offense," BOP properly considered petitioner ineligible to receive the FSA

credits).

The Court concludes that, even if bank robbery is not a disqualifying offense, the

firearms offense under 18 U.S.C. § 924(c) is.  Therefore, plaintiff is not eligible to receive FSA

time credits.

### 2. Judicial Review of FSA Time Credits Determination

BOP construes plaintiff's demand for judicial review of its FSA time credits

determination, *see* Compl. ¶ 56, as an effort to obtain "an earlier release date," Def.'s Mem. at

18, and such relief "sounds in habeas," *id*.  FSA time credits, if earned by an eligible prisoner,

are "applied toward time in prerelease custody or supervised release."  18 U.S.C. §

3632(d)(4)(C).  If plaintiff were considered eligible, the duration of his confinement could be

reduced, and to achieve this goal, plaintiff must proceed by petition for a writ of habeas corpus.

*See Davis v. U.S. Sent'g Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013) (citing *Wilkinson v.*

*Dotson,* 544 U.S. 74, 82 (2005)).

11

This Court, however, is not the proper forum for adjudication of plaintiff's habeas claim. Plaintiff currently is designated to USP McCreary in Pine Knot, Kentucky. The respondent in a habeas corpus action is plaintiff's immediate custodian, that is, the Warden of USP McCreary. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]"). Because neither plaintiff nor his custodian is in the District of Columbia, this district court "may not entertain a habeas petition involving [plaintiff's] present physical custody[.]" *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1239 (D.C. Cir. 2004).

The Court concludes that, insofar as plaintiff raises a habeas claim, the District of Columbia is not the proper forum.

### C. Sex Offender Public Safety Factor

According to plaintiff, Mr. Hart is responsible for the sex offender PSF, *see* Compl. ¶¶ 15-16, an action taken "in retaliation for . . . grievances" plaintiff made against him, *id*. ¶ 20, and in violation of plaintiff's "First Amendment right to file grievances without fear of being falsely labelled as a sex offender," *id*. ¶ 21. Here, plaintiff sues BOP for violating his First Amendment rights, *id*. ¶ 45, and he "seeks an injunction for the BOP to remove [the] Public Safety Factor for a sex offense." *Id*. ¶ 47.

### 1. First Amendment Retaliation Claim Against BOP[4]

"The government cannot circumvent the First Amendment by retaliating against those who have spoken instead of directly restricting their speech." *Bailey v. Fed. Bureau of Prisons*, No. 24-cv-1219 (PLF), 2024 WL 3219207, at \*10 (D.D.C. June 28, 2024). "To prevail on [a First Amendment retaliation] claim, [plaintiff] must show (1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him." *Harrison v. Fed. Bureau of Prisons*, 248 F. Supp. 3d 172, 183–84 (D.D.C. 2017) (quoting *Aref v.*

---

[4] There are two First Amendment-related claims plaintiff does *not* bring. First, because plaintiff neither names Mr. Hart as a party defendant nor demands damages, there is no First Amendment retaliation claim against Mr. Hart under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Jones v. Hurwitz*, 324 F. Supp. 3d 97, 100 (D.D.C. 2018) (remarking that "[a] *Bivens* action . . . 'is an action against a federal officer seeking damages'") (quoting *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 368 (D.C. Cir. 1997)). Even if plaintiff had sued Mr. Hart in his individual capacity, the *Bivens* claim would fail. "The Supreme Court has never extended *Bivens* to the First Amendment, and it has categorically foreclosed a *Bivens* remedy for First Amendment retaliation claims." *Jones v. U.S. Secret Serv.*, 143 F.4th 489, 495 (D.C. Cir. 2025); *see Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 685 (5th Cir. 2021) ("declin[ing] to extend *Bivens* to include First Amendment retaliation claims against prison officials"); *Mack v. Yost*, 968 F.3d 311, 325 (3d Cir. 2020) ("declin[ing] to extend a *Bivens* remedy for First Amendment retaliation claims brought in the prison workplace assignment context").
Second, because there is no demand for monetary damages, plaintiff does not appear to bring a constitutional tort claim against BOP that would proceed under the Federal Tort Claims Act, *see* 28 U.S.C. §§ 2674, 2679. If there were such a claim, the doctrine of sovereign immunity would bar it. *See Landis v. Moyer*, 610 F. Supp. 3d 649, 654 (M.D. Pa. 2022) (finding that *Bivens* claim "against defendant [BOP staff member] in his official capacity is barred by sovereign immunity"), *aff'd*, No. 22-2421, 2024 WL 937070 (3d Cir. Mar. 5, 2024); *Harrison*, 248 F. Supp. 3d at 183 (finding inmate's "alleged constitutional tort claims against the United States, the BOP, and its officers in their official capacities fail out of the gate on sovereign immunity grounds"); *Miller v. Fed. Bureau of Prisons*, 703 F. Supp. 2d 8, 16 (D.D.C. 2010) (citing *Lane v. Peña*, 518 U.S. 187, 192 (1996) and *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994)).

*Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016)) (internal quotation marks omitted), *on recons. in part*, 298 F. Supp. 3d 174 (D.D.C. 2018).

The filing of grievances is conduct protected by the First Amendment, *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584 (D.C. Cir. 2002) (finding that prisoners' First Amendment right to petition government "extends not just to court filings but also to the various preliminary filings necessary to exhaust administrative remedies prior to seeking judicial review"); *see Harrison*, 298 F. Supp. 3d at 182 ("The non-frivolous use of administrative grievance and legal processes is protected by the First Amendment."), and assignment of a sex offender PSF presumably would deter a person in plaintiff's position from filing more grievances.  The complaint falls short, however, on the causation element.

There must be "a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury."  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (citation and internal quotation marks omitted).  A fair reading of the complaint is that any injury plaintiff sustained is attributable to his cooperation with law enforcement.  That he is perceived as a "snitch" puts him at risk of harm, *see, e.g.*, Compl. ¶¶ 34-35, 38-41, at the hands of "anti-informant inmates," *id*. ¶ 40, and this circumstance is unrelated to assignment of the sex offender PSF.

### 2. Judicial Review of PSF Determination

Insofar as plaintiff seeks judicial review of the BOP's PSF determination under the Administrative Procedure Act ("APA"), the claim fails.  While the APA waives sovereign immunity and permits judicial review of certain agency actions, *see generally* 5 U.S.C. §§ 702, 706, the APA "do[es] not apply to the making of any determination, decision, or order under the statutes that govern the imprisonment of those convicted of a crime," *Harrison*, 248 F. Supp. 3d

at 182 (quoting 18 U.S.C. § 3625) (internal quotation marks omitted).  Plaintiff's effort "to

vacate the BOP's placement of a PSF on his record, and the housing and security determinations

that follow from that placement, fall into this category."  *Id.*

The Court concludes that it lacks jurisdiction to consider plaintiff's challenge to the sex

offender PSF under the APA.  *See Sadler v. U.S. Dep't of Justice*, No. 18-cv-1695 (TJK), 2019

WL 4644030, at \*3 (D.D.C. Sept. 23, 2019) (concluding sex offender PSF falls "within category

of imprisonment decisions exempt from APA review"); *Harrison*, 248 F. Supp. 3d at 182; *see*

*also Burnam v. Marberry*, 313 F. App'x 455 (3d Cir. 2009) (per curiam) (citing 18 U.S.C. §

3625 in affirming district court's ruling "that Congress has precluded judicial review of claims

made pursuant to § 706").

Plaintiff would be no more successful if he were to seek mandamus relief to challenge the

sex offender PSF.  "[M]andamus is 'drastic'; it is available only in 'extraordinary situations.'"

*In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (citations omitted).  "To establish entitlement

to mandamus relief, the plaintiff must demonstrate 1) a clear and indisputable right to the

particular relief sought against the federal official, 2) that the federal official is violating a clear

duty to act, and 3) that the plaintiff has no adequate alternate remedy."  *Illinois v. Ferriero*, 60

F.4th 704, 713 (D.C. Cir. 2023) (citation omitted).  Plaintiff cannot establish a clear right to relief

where, as here, judicial review is foreclosed and "BOP's decisions with respect to inmate

security and custody levels are discretionary."  *Perez v. Lappin*, 672 F. Supp. 2d 35, 45 (D.D.C.

2009); *see Wilson-Millan v. U.S. Bureau of Prisons*, No. 21-cv-1375 (EGS), 2022 WL 1568868,

at \*3 (D.D.C. May 18, 2022) (dismissing mandamus claim brought by federal inmate who

challenged denial of request for transfer from penitentiary to lower security correctional

institution).

### D. Use of Restraints[5]

"The Eighth Amendment bars the infliction of 'cruel and unusual punishments.'"

*Chandler v. District of Columbia Dep't of Corr.*, 145 F.3d 1355, 1360 (D.C. Cir. 1998) (quoting

U.S. Const. amend. VIII).  It "prohibits punishments which, although not physically barbarous,

involve the unnecessary and wanton infliction of pain, . . . or are grossly disproportionate to the

severity of the crime[.]"  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted);

*Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173

(1976)).

"In a constitutional claim alleging deliberate indifference to the conditions of a prisoner's

confinement, the plaintiff must satisfy both the 'subjective and objective requirements' of the

Eighth Amendment inquiry."  *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 846 (1994)).  "Objectively, the alleged deprivation must be

'sufficiently serious;' subjectively, the prison officials' actions[] must demonstrate a 'deliberate

indifference' to the prisoner's health or safety."  *Aref v. Holder*, 774 F. Supp. 2d 147, 168

(D.D.C. 2011) (quoting *Farmer*, 511 U.S. at 834); *see Doe v. McHenry*, 763 F. Supp. 3d 81, 88

(D.D.C. 2025) ("[P]laintiff must be confronted with an objectively intolerable risk of harm, and

prison officials must knowingly or recklessly subject the plaintiff to such a known risk.")

(citation and internal quotation marks omitted).

Plaintiff's allegations with respect to the application of or threat to apply restraints do not

establish a "sufficiently serious" deprivation of rights.  To allege having been placed in restraints

---

[5]      BOP is the sole named defendant, and without individual BOP staff member(s) as
defendants, the complaint does not state a *Bivens* claim arising from the use of restraints.  Even if
it had, the claim likely would fail.  *See Goldey v. Fields*, 606 U.S. 942, 944 (2025) (per curiam)
(declining to "recogniz[e] an implied *Bivens* cause of action for Eighth Amendment excessive-
force violations").

on 12 occasions since 2003, on unspecified dates for unspecified durations, does not suffice.  The

complaint offers generalities without alleging facts specific to any particular incident involving

the use of restraints, or allegations suggesting that BOP staff members subjected plaintiff to an

intolerable risk of harm.  To be sure, placement in restraints is neither comfortable nor without

the risk of some physical injury.  The injuries plaintiff allegedly suffered, however, are not

"serious enough to trigger the Eighth Amendment, which malicious and sadistic force will

trigger."  *Hughes v. Judd*, 108 F. Supp. 3d 1167, 1221 (M.D. Fla. 2015) (quoting *Hudson v.

McMillan*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted).  And if, as plaintiff alleges,

the prospect of restraints arose only in circumstances where he defied an order of a BOP staff

member, without additional factual allegations to suggest otherwise, the complaint falls short of

establishing that the use of restraints was objectively unreasonable.  Missing, too, are factual

allegations with regard to the subjective intent of BOP staff members responsible for the use of

restraints, without which the complaint fails to allege that BOP staff were deliberately indifferent

to plaintiff's health or safety.

### E. Plaintiff's Safety

Plaintiff's final claim, in essence, challenges BOP's designation determinations.  Plaintiff

objects to placement in federal penitentiaries, that is, penitentiaries known for inmates' hostility

toward snitches, and to denial of his requests for protective custody.  Unfortunately for plaintiff,

he has no protected interest in his place of incarceration.  *See Olim v. Wakinekona*, 461 U.S. 238,

245 (1983) (holding prisoner has no constitutionally protected interest in the place of his

confinement); *Jennings v. Fed. Bureau of Prisons*, 344 F. App'x 954, 955 (5th Cir. 2009) (per

curiam) ("An inmate lacks any constitutional interest in custodial classification, and his

disagreement with his classification is insufficient to state a constitutional violation."); *Rush v.

17

*Samuels*, 82 F. Supp. 3d 470, 485 (D.D.C. 2015) (finding that "plaintiff has no constitutionally

protected interest in his security level, custody classification, or in his designation to a particular

correctional facility or type of correctional facility"); *Akers v. Watts*, 740 F. Supp. 2d 83, 94

(D.D.C. 2010) (finding that "a prisoner has no constitutionally protected interest in his place of

confinement or security classification"); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)

(noting that federal prisoners have "no legitimate statutory or constitutional entitlement sufficient

to invoke due process" with respect to "prisoner classification and eligibility for rehabilitative

programs in the federal system").  Further, as stated above, a federal district court generally lacks

jurisdiction to review the BOP's decisions with respect to an inmate's custody classification,

security level, or placement.  *See* 18 U.S.C. § 3621(b); *see also Pinson v. U.S. Dep't of Justice*,

514 F. Supp. 3d 232, 242 (D.D.C. 2021) (noting courts' lack of "expertise as to what is required

to keep a correctional facility orderly and safe," and Congress' action "to limit courts' ability to

review BOP security and facility designations" (citing 18 U.S.C. § 3621(b)).

## IV. CONCLUSION

The Court denies leave to amend the complaint as futile, and grants defendant's motion

to dismiss because: (1) plaintiff is not eligible to receive FSA credits; (2) the Court lacks

jurisdiction to review assignment of the sex offender PSF; (3) the complaint fails to state First

Amendment retaliation and Eighth Amendment claims; and (4) plaintiff has no protected interest

in his place of confinement.  An Order is issued separately.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

DATE:  November 6, 2025